IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES BROWN,                          *

Petitioner                           *

v                                    *        Civil Action No. PWG-16-1384

JAMES FLOOD, JR., and                *
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND,                   *

Respondents                          *
                                   ***

## MEMORANDUM OPINION

Pending is James Brown's[1] *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, challenging his 2013 convictions in the Circuit Court for Worcester County, Maryland for

burglary and related offenses.[2] ECF Nos. 1, 13, 21. Respondents filed an answer, asserting that

Brown's claims are procedurally defaulted and otherwise provide no grounds for federal habeas

relief. ECF Nos. 8, 10, 25. Brown filed a reply in opposition.[3] ECF No. 25. The petition is ripe

---

[1] Petitioner was tried and convicted under the name James McKinley Brown. *See* Aug. 2014 Ct. Spec. App. Op. 1, ECF No. 8-2; Docket, ECF No. 10-1.

[2] Also pending is Brown's "Motion to Submit Newly Discovered Evidence and Renewed Request for Evidentiary Hearing" (ECF No. 31). Brown asks to file additional documents he received pursuant to the Maryland Public Information Act which he argues pertain to his ineffective-assistance-of-counsel claims. Because the Court, as discussed in this Memorandum Opinion, finds the ineffective-assistance-of-counsel claims procedurally defaulted, permitting the filing of the additional information does not change the outcome of this habeas proceeding. Accordingly, the motion will be denied by separate order.

[3] After Respondents filed a limited response seeking dismissal of the petition as unexhausted (ECF No. 8), I directed them to specify which claims they were asserting were unexhausted and to state what avenues remained available to Brown. ECF No. 9. After Respondents filed their supplement to the answer (ECF No. 10), Brown filed a supplement to his petition, adding claims that he had presented on direct appeal (ECF No. 13). Brown subsequently filed a reply to respondents' assertion that his claims were unexhausted, providing documentation that the Court of Special Appeals of Maryland had dismissed as untimely his application for leave to appeal. ECF No. 14-

for disposition, and no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; Loc. R. 105.6 (D. Md. 2018); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). After considering the submissions, I will deny the petition. A certificate of appealability shall not issue.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 10, 2013, a jury in the Circuit Court for Worcester County convicted Brown of first-degree burglary, third-degree burglary, fourth-degree burglary, theft, and malicious destruction of property. *See* Docket 3-5, ECF No. 10-1. The court sentenced him to concurrent sentences of 20 years of imprisonment on the first-degree burglary conviction, 10 years of imprisonment on the theft conviction, and 60 days in county jail for the malicious destruction of property conviction. *See id.* The court also imposed a $500 fine and ordered him to pay $170 in court costs for malicious destruction of property. The remaining convictions were merged. *Id.*.

### Summary of Facts

On August 1, 2011, Theodore Elliott's home was burglarized. When Elliot came home from work, he found the back door was open and the door frame appeared to have been pried open. Missing items included three guitars, an amplifier, a laptop, 12 to 15 Playstation 3 video games, several guitar cases, and a Ryobi screw gun with two batteries. *See* Aug. 2014 Ct. Spec. App. Op. 1-2, ECF 8-2. Several of these items were found for sale at a thrift store on August 3, 2011, and were returned to Elliott. *See id.* at 2-3.

On the morning of the burglary, a witness named Alexis Butler, who was at her aunt's home – about 1.3 miles from Elliott's home – saw Brown pull into the driveway in a silver truck.

---

1. I then directed Respondents to file an answer addressing the petition on its merits. ECF Nos. 18, 21.

*Id.* at 2. Brown was wearing a cutoff t-shirt, shorts, and black gloves. Trial Tr. 144-45, ECF 21-1. Butler observed that Brown had left his truck running and was carrying a crowbar and entered the house through the back door. *Id.* Butler spoke to Brown for 10 to 15 minutes. *Id.* at 148. Brown told her that he was a plumber and an elderly lady had called about a leak. *Id.* at 145-46. Butler testified that when Detective Robert Trautman presented her a photo array she identified Brown from the photographs in "[n]ot even five seconds." *Id.* at 149, 161.

Detective Trautman testified that when he had asked Elliott if he knew anyone who could have committed the crime, Elliott mentioned that he suspected a man known to him as "Chuck Morgan." *Id.* at 193. During the investigation, Trautman showed Butler a photograph of Morgan. *Id.* Butler said she did not think Morgan was the man who broke into the house. *Id.*; Post-Conviction R. 14-15, ECF No. 8-4.

At trial, Butler identified Brown as the man she had seen on August 1, 2011. *See* Aug. 2014 Ct. Spec. App. Op. 2 n.1. Brown testified at trial and denied burglarizing Elliott's home. *See* Trial Tr. 204-05. He testified that although the thrift store was run by the ministry he founded, he was not closely involved with its operation and was unaware that it was selling property stolen from Elliott's home. *See id.* at 201-05; Aug. 2014 Ct. Spec. App. Op. 3.

On cross-examination, concerning his contact before trial with an individual named John McLean, Brown said he told McLean that he did not have to come to court because "[w]hat I didn't want him to do was come here and perjure himself by saying that I was with him in Easton [at the time the burglary occurred] when I never told him to say that." Trial Tr. 216; *see* Aug. 2014 Ct. Spec. App. Op. 3. The State called McLean in rebuttal. McLean testified that Brown asked him to falsely testify in court that they had been together the entire day on August 1, 2011. *See* Trial

3

Tr. 225-27. McLean testified that after he decided he was not willing to lie, Brown asked him not to appear in court. *Id.*; Aug. 2014 Ct. Spec. App. Op. 3.

Procedural History

Direct Appeal

Brown appealed his convictions, presenting four questions for review: (1) whether the trial court erred by failing to grant the defense's motions for a mistrial; (2) whether the trial court erred by admitting unduly prejudicial hearsay evidence that Brown's name was seen on bills, banking statements, and other papers in and around the premises where the stolen property was located; (3) whether the trial court erred by permitting the State to introduce extrinsic evidence that Brown asked a witness to lie for him in another case in direct contravention of Md. Rule 5-608(b); and (4) whether Brown's sentence for malicious destruction of property must be merged with his sentence for first-degree burglary. *See* Aug. 2014 Ct. Spec. App. Op. 1; Appellant's Br. 2, ECF No. 21-2.

In an unreported opinion, filed on August 11, 2014, the Court of Special Appeals affirmed Brown's convictions. *Id.* On November 20, 2014, the Court of Appeals of Maryland denied Brown's petition for a writ of certiorari. *Brown v. State*, 103 A.3d 593 (Md. 2014); *see also* ECF No. 8-3.

Post Conviction Petition

On September 19, 2014, Brown petitioned for post-conviction relief in the Circuit Court for Worcester County, raising claims of ineffective assistance of counsel and prosecutorial misconduct. Brown asserted his trial counsel provided ineffective assistance by failing to: object to an improper identification; present evidence that his truck was a color other than silver; present alibi evidence; notify him of what charges were being tried on January 10, 2013; subpoena defense

4

witnesses; notify him of the State's additional witnesses; investigate a separate suspect; impeach a witness with prior convictions; request that witnesses be sequestered; cross-examine State's witness Alexis Butler effectively; present receipts for the purchase of guitars; object to the State's questioning of him at trial in regard to John McLean; and object to phone call evidence admitted at trial. Brown also claimed the prosecutor committed misconduct by failing to disclose McLean's criminal record, improperly obtaining a postponement, and using false and/or inadmissible evidence against him. Post-Conviction R. 3-14.

The Circuit Court held a hearing on the petition on October 14, 2015, and denied relief on December 21, 2015. *Id.* at 13-14, 26. Brown on February 18, 2016, filed an application for leave to appeal the denial. *Id.* at 27-50; Sept. 2016 Ct. Spec. App. Order 1-2, ECF No. 14-1. On September 19, 2016, the Court of Special Appeals dismissed Brown's application, determining it lacked jurisdiction because the application was untimely. *See* Sept. 2016 Ct. Spec. App. Order 1-2.

## PETITIONER'S CLAIMS

In this petition for federal habeas relief, Brown asserts claims of ineffective assistance of trial counsel, prosecutorial misconduct, trial court error, and post-conviction court error. He claims trial counsel was ineffective in failing to: (1) object to an improper pretrial identification; (2) present evidence that his truck was not silver; (3) present alibi evidence; (4) notify him of the charges that were being tried on January 10, 2013; (5) subpoena defense witnesses; (6) notify him of additional State's witnesses; (7) investigate a separate suspect; and (8) object to phone call evidence. *See* Pet. 15-26, ECF No. 1. Brown also asserts claims of prosecutorial misconduct for: (9) improperly calling a State witness to identify him before trial without defense counsel present; (10) improperly obtaining a postponement; and (11) failing to disclose State witness John

McLean's criminal record. *Id.* at 15-17. Additionally, Brown asserts that (12) his post-conviction counsel was ineffective in failing to subpoena a witness and (13) the prosecutor committed perjury at the post-conviction hearing. *Id.* at 19, 28. Respondents assert these claims are procedurally defaulted and otherwise are without merit. April 2017 Answer 21-24, ECF No. 21.

In his supplement to the petition, Brown asserts the same claims of trial court error he presented on direct appeal – namely, that the trial court erred by: (14) failing to grant him a mistrial; (15) admitting evidence that his name was on bills, banking statements, and other papers in and around the premises where the stolen property was located; and (16) permitting the State to introduce extrinsic evidence that Brown asked a witness to lie for him in contravention of Md. Rule 65-608(B); and (17) neglecting to merge his sentence for malicious destruction of property.[4] *See* Suppl. 1-2, 2-20, ECF No. 13; Appellant's Br. 2. Respondents have not asserted these claims are procedurally defaulted.

## DISCUSSION

Section 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

---

[4] Petitioner did not ask for leave to amend the petition, nor have Respondents addressed these claims in their supplemented answer or asserted they were procedurally defaulted. Requiring further supplementation, however, would be futile because, for reasons to be discussed, it is clear these claims provide no cause for federal habeas relief under the applicable deferential standard of review.

## Threshold Considerations

### Exhaustion

The exhaustion doctrine, codified at 28 U.S.C. § 2254(b)(1),[5] "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution." *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (internal citations, footnote, and quotation marks omitted). Moreover, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)). Thus, the Supreme Court has cautioned litigants: "before you bring any claims to federal court, be sure that you first have taken each one to state court." *Id.* at 520; *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) ("Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court." (citing § 2254(b)(1), (c))).

---

[5] Subsection (b)(1) of § 2254 states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
> (A) The applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

§ 2254(b)(1). Subsection (c) provides: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the state, within the meaning of this section, if he has the right under the law of the state to raise, by any available procedure, the question presented." *Id.* § 2254(c).

## Procedural Default

In *O'Sullivan v. Boerckel*, the Supreme Court stated: "To . . . 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts." 526 U.S. at 848 (internal citation omitted); *see also id.* at 844 ("Section 2254(c) requires only that state prisoners give the state courts a *fair* opportunity to act on their claims."). The inquiry, then, is "[w]hether a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has *properly* presented his claims to the state courts," and where the answer to this question is "no," the conclusion follows that the petitioner "has procedurally defaulted his claims." *Id.* at 848. Stated differently, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. The *O'Sullivan* Court noted, however, that:

> In this regard, we note that nothing in our decision today requires the exhaustion of any specific state remedy when a State has provided that that remedy is unavailable. Section 2254(c), in fact, directs federal courts to consider whether a habeas petitioner has *"the right under the law of the State to raise, by any available procedure,* the question presented." (Emphasis added.) The exhaustion doctrine, in other words, turns on an inquiry into what procedures are "available" under state law. In sum, there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available.

*Id.* at 847-48; *see also Breard v. Pruett*, 134 F.3d 615, 619 (1998) ("A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991))). A procedural default also may occur when a state court declines "to consider the

8

merits [of a claim] on the basis of an adequate and independent State procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Breard*, 134 F.3d at 619.

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show: (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that failure to consider the claim on the merits would result in a fundamental miscarriage of justice, *i.e.*, the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S 478, 495-96 (1986). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard,* 134 F.3d at 620. To demonstrate prejudice, a habeas petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494 (quoting *Frady*). Even when a petitioner fails to show cause and prejudice for a procedural default, a court still must consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

Respondents assert that Brown's claims of ineffective assistance of counsel (Claims 1-8) and prosecutorial misconduct (Claims 9-11), as well as his claims relating to the post-conviction proceedings (Claims 12-13), are procedurally defaulted because these claims were not raised before the state post-conviction court at the appellate level. *See* April 2017 Answer 21; *see also* Sept. 2016 Suppl. Answer 4, ECF No. 10. Brown raised these claims before the Circuit Court in his petition for post-conviction relief, and they were denied on their merits. Post-Conviction R. 18-26. Brown takes issue with the Court of Special Appeals' subsequent dismissal of his

application for leave to appeal the denial of his petition, seemingly arguing that the Circuit Court did not promptly send him a copy of its decision denying post-conviction relief as required by Md. Rule 4-407(c), that he was unaware of the Circuit Court's decision until January 15, 2016, and that his lateness in filing the application was due to no fault of his own. *See* Pet. 20-21; Jan. 2016 Mot. to Reissue 2-3, ECF No. 25-7.

The Court of Special Appeals premised its ruling on the Maryland Rules of Procedure:

> Pursuant to Maryland Rule 8-204(b)(2)(A), applicant had 30 days, or until January 20, 2016, to file an application for leave to appeal. Applicant's application for leave to appeal was entered on the docket on February 18, 2016.
> Pursuant to Maryland Rule 1-204(a) a circuit court lacks the authority to extend the filing deadline for an application for leave to appeal. The requirement in Maryland Rule 8-204(b)(2)(A) that an application for leave to appeal be filed within thirty days after entry of judgment is jurisdictional. *Keys* v. *State,* 195 Md. App. 19, 27-28 (2010). If the requirement is not met, this Court does not acquire jurisdiction, and the application for leave to appeal must be dismissed. *Id.*

Sept. 2016 Ct. Spec. App. Order 1.

The appellate court premised its determination on the Maryland Rules of Procedure, which are independent state procedural rules. A federal district court has no authority to alter or amend the state appellate court's ruling on an issue of state procedural law. A federal habeas court generally is unable to review a federal constitutional claim that was "procedurally defaulted" due to the defendant's failure to raise the claim in accordance with state law requirements. *Johnson v. Lee*, 136 S. Ct. 1802, 1803 (2016); *see also Yeatts* 166 F.3d at 260 (noting that a procedural default may occur on the basis of an adequate and independent state procedural rule). Of import here, Brown does not assert in his response that he is actually innocent, nor does he identify grounds

sufficient to find cause and prejudice to excuse the procedural default.[6] Accordingly, claims 1 through 13 will be denied and dismissed because they are procedurally defaulted.[7]

Legal Standard

As noted above, a petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a) (stating "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). A state adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application analysis," a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

---

[6] Brown was notified that procedurally defaulted claims may not be reviewed absent cause and prejudice or a showing that failure to consider the claim would result in a miscarriage of justice, *i.e.*, the conviction of one who is actually innocent. *See* ECF No. 23.

[7] Having determined these claims are procedurally defaulted, the Court will not consider them on their merits.

the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if 'reasonable minds reviewing the record might disagree' about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (quoting *Rice v Collins*, 546 U.S. 333, 341-42 (2006)).

Further, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

<u>Analysis of Non-Defaulted Claims</u>

Brown's claims in this action challenge state court rulings solely as they pertain to Maryland procedural and substantive law. *See* Suppl. These claims are unreviewable here, as it is not the role of a federal habeas court to second-guess state court rulings as they pertain to matters of state law. *See Rose v. Hodges*, 423 U.S. 19, 21-22 (1975); *see also Estelle v. McGuire,* 502

U.S. 62, 67-68 (1991)) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

<u>Whether the Trial Court Erred in Declining to Grant a Mistrial (Claim 14)</u>

Brown asserts he should have been granted a mistrial on account of witness remarks that caused him prejudice. In rejecting this claim on direct appeal, the Court of Special Appeals stated:

> [Brown] contends that, even though the court ruled that the jury would be allowed to hear from Butler with respect to only the fact that she observed [Brown] in her aunt's home, the jury had already heard Sergeant Matthew Crisafulli speak about a "victim" from a "subsequent burglary near the vicinity of Mr. Elliott's house." He points out that the jury also heard that [Brown] was the subject of investigation by three different divisions of law enforcement for "burglaries or other events." [Brown] asserts that he was prejudiced by the references to other burglaries, and that the court's instruction for the jury to disregard such testimony was ineffective and actually drew attention to the improper remarks. Accordingly, he insists that the court erred by not granting one of his two motions for mistrial.

Aug. 2014 Ct. Spec. App. Op. 4.[8] During direct examination, Sergeant Matthew Crisafulli testified that he originally investigated Chuck Morgan as a possible suspect in the burglary, *see* Trial Tr. 105, and the following exchange occurred:

---

[8] Prior to trial, the State over an objection by the defense moved to join Brown's two burglary cases (the case involving the burglary of Butler's aunt's home and the instant case involving Elliott's home). The motion was denied. *See* Trial Tr. 4; Appellant's Br. 6. On the day of trial, defense counsel moved *in limine* to prevent the State from questioning Butler about the burglary of her aunt's home, as it would constitute inadmissible evidence of prior bad acts. *See* Appellant's Br. 6. The court indicated it would be premature for it to rule on the admissibility of the testimony and indicated that a hearing out of the presence of the jury would be conducted. *See* Trial Tr. 17. In the interim, the trial continued and witnesses were called, including Sergeant Crisafulli. The court subsequently heard argument and testimony on whether to exclude Butler's testimony in this case, and the court ruled Butler could testify in a limited manner about her observations and interaction with Brown on the day in question. *See* Aug. 2014 Ct. Spec. App. Op. 4 n.2; Trial Tr. 108-12.

13

[State's Attorney]: [A]fter you got that information [regarding the other suspect] and you looked into that information, did you then meet with a potential witness Alexis Butler?

[Sergeant Crisafulli]: That's correct. After I had learned that there was a subsequent burglary near the vicinity of Mr. Elliott's house, I . . . met with the victim in that case who I had knowledge had observed a subject in her residence.

Trial Tr. 106. Defense counsel asked to approach the bench out of the jury's hearing and the

following discussion ensued:

[Defense Counsel]: Your Honor, the State has now elicited testimony regarding Alexis Butler, a subsequent burglary, which the Court has not yet permitted in[,] in which the Court seemed was leaning to not let in. I think this is highly prejudicial to my client, and I would move for a mistrial.

. . .

[State's Attorney]: Briefly, I would only say, Your Honor, the State's position is that we did not elicit that testimony. The defense questioned the last witness about a potential other suspect. This witness met with Alexis Butler, a witness.

[The Court]: I understand that.

[State's Attorney]: I did not anticipate the response that was given.

. . .

[The Court]: All right. The Motion for a mistrial is denied. The Court is going to instruct the jury that they are to disregard the testimony of the witness [to which an objection was raised] and strike it from their consideration in this matter.

Madam State, it's clear to me that this witness has not been adequately prepared to deal with this portion of the questioning that you're asking him. And I can only tell you that if he says anything like that again, I'm going to grant a mistrial. If you want me to excuse the jury so you can caution him out of the presence of the jury as to the topic about which he can respond, the questions that you intend to ask him and the limitations upon his response, then I'll permit you to do that.

*Id.* at 106-07.

The court then directed the jury to disregard the witness's testimony about an alleged subsequent burglary by instructing:

> Members of the jury, the last testimony you heard from this witness which was -- and I'm not . . . quoting here -- but to the effect that he learned of an alleged subsequent burglary near Mr. Elliott's house and he took a picture and met with the victim is inadmissible. The Court directs that you strike that testimony from your consideration and from your memory. It cannot be considered by you in your deliberations in this case at all.

*Id.* at 108.

Later, defense counsel again moved for a mistrial, this time in response to Detective Trautman's testimony concerning his investigation.

> [State's Attorney]: And through that investigation, were you able to develop a potential suspect?
>
> [Detective Trautman]: I did.
>
> [State's Attorney]: And who was the suspect that you developed?
>
> [Defense Counsel]: Objection.
>
> [The Court]: The objection is sustained.
>
> [State's Attorney]: What -- based on your investigation after developing a suspect, what did you do?
>
> [Detective Trautman]: We developed a suspect with coordinated effort with the Delaware State Police and Wicomico County --
>
> [Defense Counsel]: Objection.
>
> [The Court]: The question is, what did you do after you developed a suspect?

*Id.* at 122-23. Defense counsel asked to approach the bench, and the following discussion occurred outside the hearing of the jury.

[Defense Counsel]: Your Honor, it is clear that the State, having a lack of evidence, is simply trying to smear my client with other crimes evidence and essentially with every witness she calls. And I would renew my motion for a mistrial at this stage, Your Honor. We're now not only in Wicomico County, we're now in Delaware talking about other crimes evidence. And this is clearly not responsive. This is clearly what the State's trying to do, just smear my client by innuendo.

[The Court]: I'll hear from you.

[State's Attorney]: Your honor, the State in no way is attempting to do that. However -- and I am not suggesting that the Court has effected [sic] the presentation of this case by its rulings because I still believe that the evidence that Alexis Butler will provide is relevant. However, it has impacted the ability of the State to effectively present the evidence leading up to the seizure of the property. There is a relevant witness whose testimony has not been heard.

[The Court]: Well, and it may not be heard. The point being, it's not necessary nor even normally admissible for police officers to testify to their investigative efforts which lead to evidence that is then admissible against the defendant because all sorts of things in connection with an investigation are simply inadmissible under the rules of law of evidence

And it strikes the Court that the State's witnesses are not very well prepared. You asked this witness a question, and he answers it in some way addressing issues that are not required to answer the question. He talks about an investigation in conjunction with Delaware [police] and Wicomico County [police]. It's simply not necessary and would not be admissible.

The evidence against the defendant is what it is. How it was developed is in general a matter of no consequence, or if it is a matter of consequence, it's still subject to the rules of evidence.

I don't think a mistrial is appropriate at this point. Again, I'm going to caution the State that I'm going to instruct the jury that they're to disregard any reference to an investigation with Wicomico County authorities or Delaware authorities -- state of Delaware authorities.

*Id.* at 124-25.

The trial court judge warned this was the "last time" he would caution the State on this matter. *Id.* at 125. The judge added he did not fault the State, remarking that the problem arose because the defense "belatedly" requested a hearing *in limine* on Butler's testimony, and as a result the State did not have the opportunity to caution its witnesses in this regard. *Id.*

The judge proceeded to instruct the jury to "disregard [Detective Trautman's] testimony to the extent that it referred to any investigation in Wicomico County or in Delaware with respect to burglaries or other events which led to the development of evidence in this case." *Id.* at 126.

Brown's arguments here, as on direct appeal, are premised wholly on state law precedent. *See* Appellant's Br. 9-13. In deciding whether a mistrial was required because the two portions of the testimony were "so prejudicial to [Brown] that they effectively denied him a fair trial," the Court of Special Appeals looked to several factors enumerated in *Braxton v. State*, 720 A.2d 27 (Md. Ct. Spec. App. 1998), including whether the inadmissible evidence was repeated, was solicited by counsel, or was stated by a principle witness, as well as whether that witness's credibility was particularly at issue. *See* Aug. 2014 Ct. Spec. App. Op. 9-11.

Applying these factors, among others, the state appellate court concluded that each instance of disputed testimony at issue consisted of a single statement that immediately was the subject of an objection and a curative instruction. The court also noted the trial judge determined the testimony was not intentionally elicited by the State's Attorney and that neither witness was a principal upon which the State's case depended. *See id.* at 11. The court continued:

> The stronger evidence in the case was with respect to the victim describing his stolen property, [Brown] being seen in the vicinity of Elliott's home close in time to when the subject burglary would have been committed, the stolen property being found in the thrift store run by [Brown's] ministry, and McLean asserting that [Brown] had asked him to give false testimony to the effect that the two of them were together on the day of the burglary. The credibility of the officers does not appear to have been crucial to the case.

Additionally, we note that the disputed remark by Detective Trautman was merely with respect to "a suspect." His testimony never confirmed that the suspect he mentioned, prior to [Brown's] counsel's objection, was [Brown]. Further, it would not have necessarily been the logical assumption that [Brown] was the indicated suspect given that at least one other suspect was spoken of at trial. Although Sergeant Crisafulli did mention that Butler had been the victim of a burglary, that slip was the subject of a prompt curative instruction to disregard. Butler's own testimony at a later point in the case did not make any assertions which indicated that she had been a witness to a burglary wherein [Brown] was the offender.

In light of our assessment of relevant prejudice-related considerations, we are not persuaded that the trial court abused its discretion in denying [Brown's] motions for mistrial based on the noted instances of witness testimony. "'The necessity of a mistrial turns on whether the damage in the form of prejudice to the defendant transcended the effect of a curative instruction and deprived appellant of a fair trial.'" *Diggs & Allen*, 213 Md. App. at 70 (quoting *McIntyre*, 168 Md. App. at 524). Here, we are satisfied that, because the disputed remarks were isolated and met with swift, and effective, curative instructions from the trial court, it was not an abuse of discretion for the judge to decide to continue with the proceedings rather than grant a mistrial. *See Braxton*, 123 Md. App. at 662-66, 669-70 (court did not abuse its discretion in denying motions for mistrial after (1) it had issued a curative instruction following a police officer witness's testimony that he had obtained the accused's address from his arrest record, and (2) corrective and clarifying testimony was given after another officer testified that a gun used in the subject offense had also been used to shoot a police officer on the same night).

*Id.* at 10-12.

Turning to Brown's petition, I observe that Brown does not here allege – and, indeed, did not allege before the state appellate court – that this claim violated a federal constitutional right or federal law. *See* Suppl. 2-10; Appellant's Br. 6-14.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 68. Brown

asserts that under *Maryland* law, the trial court should have declared a mistrial when Sergeant Crisafulli and Detective Trautman provided the challenged testimony. The Court of Appeals disagreed and found the statements were properly cured and did not deprive him of a fair trial. To the extent Brown presents these issues on federal habeas review as errors of state law, the claims are not cognizable. *See id.* at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010) (per curiam); *Spencer v. Murray*, 18 F.3d 237, 239-40 (4th Cir. 1994) (where petitioner complained about the admissibility of evidence, without citing any constitutional provision or mentioning any constitutional right that was infringed, no federal claim was stated).

Even if this claim were cognizable, I would find there is no basis for habeas relief. The Court of Special Appeals' determination that the trial court did not abuse its discretion when it denied Brown's mistrial motions was based on the trial court's curative instructions; the single, isolated nature of the witness testimony; the fact that the testimony was unanticipated and unsolicited by counsel; and other factors, including the existence of other evidence supporting the jury's findings. Brown does not meet his burden under the deferential standard of federal habeas review, and so the state court decision may not be disturbed.

### Whether the Trial Court Erred by Admitting Evidence that Brown's Name Was on Bills, Banking Statements, and Paperwork (Claim 15)

Brown presented this claim to the Court of Special Appeals, arguing that the primary evidence linking him to the burglary at the Elliott house was the fact that some of the property was recovered from the thrift store associated with the ministry he had founded. Brown asserts that the State's attempts at trial to strengthen his connection to the store by eliciting testimony from Officer Lindsey Lloyd that documents with Brown's name on them which were found at the store should have been excluded as inadmissible hearsay, and that the testimony was erroneously

admitted to demonstrate his "proprietary interest in the thrift store where the property was located." Aug. 2014 Ct. Spec. App. Op. 12-17; *see* Suppl. 10-14. Brown's claim is based on the following colloquy at trial:

> [State's Attorney]: And while you were there, did you observe any paperwork which had the defendant's name on it?
>
> [Officer Lloyd]: Yes, I did.
>
> [State's Attorney]; What type of paperwork?
>
> [Officer Lloyd]: I believe that there was bills of some sort.
>
> [Defense Counsel]: Your Honor, I'm going to object. This is both hearsay and not the best evidence. I haven't received any paperwork.

Trial Tr. 114.

The trial judge directed counsel to approach the bench. The State's Attorney proffered that Lloyd was "going to say that she observed paperwork with [Brown's] name on it." *Id.* at 115. The judge overruled the objection, and the colloquy continued:

> [State's Attorney]: What types of paperwork did you observe?
>
> [Officer Lloyd]: I believe it was bills. Possibly some banking statements.
>
> [State's Attorney]: Did you also -- well, describe the front entrance of that location.
>
> [Officer Lloyd]: The front entrance had -- I believe it was Renewed Spirit Thrift Store written in lettering on the front of the door. It also had sheets of paper with some writing on it taped to the front glass door.
>
> [State's Attorney]: Did you observe [Brown's] name on any of the paperwork?
>
> [Officer Lloyd]: Yes I did. It said Pastor James Brown.

*Id.* at 115-16.

The Court of Special Appeals distinguished the facts here from those in *Bernadyn v. State*, 887 A.2d 602, 605 (Md. 2005), a case Brown argued was analogous. In *Bernadyn*, the Court of

Appeals held that hearsay must be excluded as evidence at trial unless it falls within a hearsay exception or is permitted by constitutional provisions or statutes. *See* Aug. 2014 Ct. Spec. App. Op. 12-13. In Brown's case, the Court of Special Appeals found the disputed testimony spoke only to the fact that the documents observed at the thrift shop had Brown's name on them. *See id.* at 15. The testimony provided no additional factual assertions, nor was it offered to prove anything related to the substance of the documents. Accordingly, the court concluded that Officer Lloyd's statements were merely testimony regarding circumstantial non-assertive evidence related to the burglary. *See id.* at 15-16. Further, it stated, any error in admitting the testimony "was rendered harmless beyond a reasonable doubt" when Brown testified the store was associated with his ministry. *Id.* at 16.

Brown's § 2254 petition identifies no constitutional violation and instead challenges the state court's determination of this claim. *See* ECF Nos. 1, 13. Because the claim rests on interpretation of state evidentiary rules and does not allege infringement of federal constitutional or other federal protections, it is not a cognizable ground for federal habeas corpus relief. *See* 28 U.S.C. § 2254(a); *McGuire*, 502 U.S. at 69; *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998). Habeas relief is proper only "when a state court's evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." *Turner v. Armontrout,* 845 F.2d 165, 169 (8th Cir. 1988), *cert. denied,* 488 U.S. 928. Here, Brown does not allege, nor does the record suggest, a violation of Brown's constitutional rights. Brown does not show the state court decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts presented in the state court proceeding. This claim provides no cause for federal habeas relief and will be denied.

<u>Whether the Trial Court Erred by Permitting the State to Introduce Extrinsic Evidence
that Brown Asked a Witness to Lie for Him (Claim 16)</u>

Brown argued on appeal that the trial court improperly admitted evidence that Brown had

asked McLean to falsely testify that they were together on the day of the burglary and that

McLean's statement was made "in the context of a separate burglary case," *i.e.*, the burglary of

Alexis Butler's aunt's house. Appellant's Br. 21-22; *see* Aug. 2014 Ct. Spec. App. Op. 16.

In affirming the decision of the trial court as to this claim, the Court of Special Appeals

noted that Maryland Rule 5-616(b)(2) provides that "extrinsic evidence contradicting a witness's

testimony ordinarily may be admitted on non-collateral matters." Aug. 2014 Ct. Spec. App. Op.

17. The rule also provides: "[i]n a court's discretion . . . extrinsic evidence may be admitted on

collateral matters." *Id.* (alterations in original). The Court explained:

> The test as to whether a matter is collateral, or not, involves the determination
> of "'whether the fact as to which the error is predicated is relevant
> independently of the contradiction; and not whether the evidence would be
> independently admissible in terms of satisfying all the rules of evidence.'" *Aron
> v. Brock,* 118 Md. App. 475, 495 (1997) (quoting *Smith v. State,* 273 Md. 152,
> 162 (1974)).

> Initially, we note that, although [Brown] contends that McLean's testimony
> pertained to a separate burglary case, that distinction was not made plain at trial.
> McLean's testimony did not specify which case was the subject of [Brown's]
> request for him to testify falsely.

> Because [Brown] had taken the stand and testified that he had not solicited McLean
> to provide false alibi testimony, it was not an abuse of discretion for the trial court
> to admit McLean's rebuttal testimony pursuant to Rule 5-616(b)(2) as "extrinsic
> evidence contradicting a witness's testimony." If McLean's version of events was
> believed, the fact that [Brown] had, at some point, asked McLean to testify falsely
> with respect to the fact that the two were together on the date the Elliott burglary
> occurred was relevant to [Brown's] consciousness of guilt.

*Id.* at 17-18.

Because Brown fails in his federal petition to allege abridgement of a specific constitutional

right or federal law, his claim is not cognizable on federal habeas review. Admissibility rulings

support the grant of habeas relief only when the alleged error infringes upon a specific constitutional right or is so prejudicial that it amounts to the denial of due process. *See Turner*, 845 F.2d at 169. The issue is not whether the trial court erred in admitting the evidence, but whether its admission "resulted in a trial so fundamentally unfair" that the petitioner was denied due process of law. *See Rainer v. Dep't of Corrs.*, 914 F.2d 1067, 1072 (8th Cir. 1990). Brown presents no evidence to suggest a violation of due process or any other constitutional infringement. Accordingly, habeas relief will be denied as to this claim.

### Whether the Trial Court Erred in Failing to Merge His Sentence for Malicious Destruction of Property (Claim 17)

Brown alleged on direct appeal that under the evidence presented at trial, his malicious destruction of property conviction would have had to have been based on the same facts as his burglary conviction, and so his sentence for malicious destruction of property must be vacated under the merger doctrine. *See* Suppl. 18-20; Appellant's Br. 22-24.

This claim is wholly premised on Maryland law and Maryland sentencing provisions in criminal cases. *See* Suppl. 18-20; Appellant's Br. 22-24. It is not the role of this Court to second-guess those conclusions. *See Rose v. Hodges*, 423 U.S. 19, 21-22 (1975). And there is no federal constitutional right to merger of convictions for the purpose of sentencing. *See Hill v. Hershberger*, No. PJM-12-2386, 2013 WL 3364374, at *7 (D. Md. July 2, 2013) (citing *Hendricks v. Zenon,* 993 F.2d 664, 674 (9th Cir. 1993)). The merger of convictions presents a question that is exclusively a state law matter and is not cognizable in a federal habeas corpus proceeding. *Id.*

### CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Buck v. Davis*, __ U.S. __, 137 S. Ct. 759, 773 (2017) (citing *Miller-El v. Cockerell*, 537 U.S. 322, 336 (2003)).

To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). When a petition is denied on procedural grounds, a petitioner meets the standard with a showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.* at 478. I find that Brown has not made the requisite showing and therefore decline to issue a certificate of appealability.[9]

## CONCLUSION

Upon review of the petition for writ of habeas corpus, the response, and the exhibits, this Court determines that Brown is not entitled to federal habeas relief. There is no basis upon which to find constitutional deficiencies in the state court proceedings. Accordingly, the Court will in a separate order deny and dismiss the petition and decline to issue a certificate of appealability.

Date: August 20, 2019

Paul W. Grimm
United States District Judge

___

[9] When a district court dismisses a habeas petition solely on procedural grounds, a COA will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.' " *Rouse v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Denial of a COA in the district court does not preclude a petitioner from requesting a COA from the appellate court.